*638
 
 Opinion
 

 GOERTZEN, J.
 

 Petitioners/appellants Howard Mann, Eugene Rosenfeld, and the Andrex Group (collectively as appellants) appeal from the judgment denying their petition for a writ of mandate. (Code Civ. Proc., § 1085.) Appellants had petitioned to require respondents the Community Redevelopment Agency of the City of Hawthorne (Agency) and the City of Hawthorne (City) to set aside their certification of the final environmental impact report, dated August of 1989, for a proposed redevelopment project located in the City.
 

 Respondents request imposition of sanctions on appeal.
 

 For the reasons discussed below, we affirm the judgment. We also decline to impose sanctions on appeal.
 

 Facts
 

 In April 1986, the Agency selected appellants’ proposal for redevelopment of a 20-acre parcel in Hawthorne project area 2. The parties agreed to proceed with fiirther exclusive negotiations in an attempt to reach an owner participation agreement. Appellants’ proposal was chosen over one proposed by Watt Industries, another developer.
 

 In June 1986, the Agency entered into a negotiation agreement with appellants which provided for an exclusive right to negotiate for 60 days. Negotiations continued until December 1986, when negotiations collapsed after the final appraisal figures for acquiring the property from private owners were higher than anticipated. Appellants’ project consisted of 2 hotels (maximum 525 rooms), office space (maximum 594,000 sq. ft.), 3 restaurants, parking for 2,843 cars, and retail/commercial space (24,000 sq. ft.).
 
 [1]
 

 From January 1987, through June 1988, the Agency unsuccessfully negotiated with Watt Industries for development of the same project site. The
 
 *639
 
 Watt Industries proposal consisted of 1 hotel (300 rooms), office space (maximum 1,172,000 sq. ft.), retail and commercial space (25,000 sq. ft.) and parking for 4,830 cars. This project was ultimately withdrawn by Watt Industries.
 

 Both appellants’ and Watt Industries’ projects were the subject of an environmental impact report (EIR) which was completed and certified in February 1987.
 

 On December 28, 1988, the Agency began negotiations with Cloverleaf South Bay, Ltd. (Cloverleaf), regarding a 28-acre site in project area 2, which encompassed the 20-acre parcel appellants had sought to develop. The Cloverleaf project consists of 500 condominium units; 3 hotels (800 rooms); 3 restaurants; and 148,000 square feet of retail/commercial uses, including a day care center (4,000 sq. ft.), a movie theater complex (20,000 sq. ft.), retail commercial (104,000 sq. ft.), and a health club (20,000 sq. ft.).
 

 In August 1989, the final EIR (FEIR) on the Cloverleaf project was certified, and the disposition and development agreement between the Agency and Cloverleaf was executed. This FEIR is the subject of this appeal.
 

 In the section entitled “Project History,” the FEIR related that appellants’ project previously had been chosen over the Watt Industries project; appellants ultimately withdrew their project; and after 18 months of negotiations with Watt Industries, Watt Industries withdrew its proposal “primarily as a result of financing difficulties.”
 

 As required by pertinent California Environmental Quality Act (CEQA) guidelines, the FEIR included a section which discussed alternatives to the proposed project. The alternatives described included no project, an office-food court project, a research and development project, and an increased retail square footage project.
 

 Procedural History
 

 On September 29,1989, appellants filed their petition for peremptory writ of mandate, or alternatively, a writ of administrative mandamus. The Agency and City answered, as did Cloverleaf. Appellants challenged the adequacy of the FEIR, asserting that it was deficient because it failed to list appellants’ project or the Watt Industries project as alternatives and failed to explain why their project had been rejected.
 

 The hearing on the petition was held on April 26, 1990. Noting that the FEIR did discuss the fact that the Agency had negotiated with appellants and that appellants had withdrawn their project proposal, the court pressed
 
 *640
 
 appellants to explain what type of discussion they deemed necessary. Counsel replied that the FEIR could have stated something to the effect that negotiations on appellants’ project “broke down, it is now in litigation and it is the opinion of Agency counsel, Agency consultants, et cetera, that that proposal is not economically feasible today.” Appellants also asserted that the FEIR should have explained why certain economic demands were made on them which were not being made on Cloverleaf.
 

 The court denied the petition.
 
 [2]
 
 Judgment was entered on May 9, 1990, and notice of entry of judgment was served on appellants on May 21, 1990. A timely notice of appeal was filed.
 

 Standard of Review
 

 “In reviewing agency actions under CEQA, Public Resources Code section 21168.5 provides that a court’s inquiry shall extend only to whether there was a prejudicial abuse of discretion. Abuse of discretion is established
 
 *641
 
 if the agency has not proceeded in a manner required by law or if the determination or decision is not supported by substantial evidence. Thus, the reviewing court does not pass upon the correctness of the EIR’s environmental conclusions, but only upon its sufficiency as an informative document. [Citations.] We may not set aside an agency’s approval of an EIR on the ground that an opposite conclusion would have been equally or more reasonable. Our limited function is consistent with the principle that the purpose of CEQA is not to generate paper, but to compel government at all levels to make decisions with environmental consequences in mind. CEQA does not, indeed cannot, guarantee that these decisions will always be those which favor environmental considerations. [Citations.] We may not, in sum, substitute our judgment for that of the people and their local representatives. We can and must, however, scrupulously enforce all legislatively mandated CEQA requirements.”
 
 (Citizens of Goleta Valley
 
 v.
 
 Board of Supervisors
 
 (1990) 52 Cal.3d 553, 564 [276 Cal.Rptr. 410, 801 P.2d 1161], internal quotation marks omitted.)
 

 “In applying the substantial evidence standard, the reviewing court must resolve reasonable doubts in favor of the administrative finding and decision. [Citation.]”
 
 (Laurel Heights Improvement Assn.
 
 v.
 
 Regents of University of California
 
 (1988) 47 Cal.3d 376, 393 [253 Cal.Rptr. 426, 764 P.2d 278], internal quotation marks omitted.)
 

 With these standards in mind, we turn to the case before us.
 

 Discussion
 

 The foremost principle underlying the CEQA is to afford the “fullest possible protection to the environment within the reasonable scope of the statutory language. [Citation.]”
 
 (Laurel Heights Improvement Assn.
 
 v.
 
 Regents of University of California, supra,
 
 47 Cal.3d at p. 390, internal quotations marks omitted.) The EIR is the “heart of CEQA”; it is an “environmental alarm bell whose purpose it is to alert the public and its responsible officials to
 
 environmental changes
 
 before they have reached ecological points of no return. [Citations.] The EIR is also intended to demonstrate to an apprehensive citizenry that the agency has, in fact, analyzed and considered the
 
 ecological implications
 
 of its action. [Citations.]”
 
 (Id.,
 
 at p. 392, italics added, internal quotation marks omitted.) The core of an EIR is the mitigation and alternatives section.
 
 (Citizens of Goleta Valley
 
 v.
 
 Board of Supervisors, supra,
 
 52 Cal.3d at p. 564; Pub. Resources Code, § 21061.) “CEQA establishes no categorical legal imperative as to the scope of alternatives to be analyzed in an EIR. Each case must be evaluated on its facts, which in turn must be reviewed in light of the statutory purpose. ... an EIR for any project subject to CEQA review must consider a reasonable
 
 *642
 
 range of alternatives to the project,
 
 or to the location of the project,
 
 which: (1) offer substantial environmental advantages over the project proposal [citation]; and (2) may be ‘feasibly accomplished in a successful manner’ considering the economic, environmental, social and technological factors involved. [Citations.]”
 
 (Citizens of Goleta Valley
 
 v.
 
 Board of Supervisors, supra,
 
 52 Cal.3d at p. 566, italics in original.)
 

 Appellants assert that the court wrongly denied their petition for writ of mandate because the FEIR was legally inadequate as its “Alternatives” discussion was incomplete, and the FEIR failed to disclose the analytical route taken to reach its conclusion that there were no other feasible project alternatives. These assertions are without merit.
 

 First, we stress the obvious—as noted above, the entire
 
 raison d’étre
 
 of CEQA is protection of the physical environment. All the requirements fashioned to meet this goal must be interpreted in light of this mandate. Second, as noted by the court below, the “rule of reason” applies to requirements for consideration of alternatives.
 
 (Citizens of Goleta Valley
 
 v.
 
 Board of Supervisors, supra,
 
 52 Cal.3d at p. 565.)
 

 Project Alternatives Discussion.
 
 Appellants argue that the FEIR is legally deficient because it does not include a discussion either of its proposal or of that submitted by Watt Industries.
 

 The CEQA guidelines
 
 [3]
 
 require discussion of “alternatives capable of eliminating any significant adverse environmental effects or reducing them to a level of insignificance.” (Cal. Code Regs., tit. 14, § 15126, subd. (d)(3).) They also provide that the alternatives discussion is “governed by ‘rule of reason’ that requires the EIR to set forth only those alternatives necessary to permit a reasoned choice. The key issue is whether the selection and discussion of alternatives fosters informed decisionmaking and informed public participation. An EIR need not consider an alternative whose effect cannot be reasonably ascertained and whose implementation is remote and speculative. [Citation.]” (Cal. Code Regs., tit. 14, § 15126, subd. (d)(5).) The guidelines define “Significant effect on the environment” as “a substantial, or potentially substantial, adverse change in any of the physical conditions within the area affected by the project including land, air, water, minerals, flora, fauna, ambient noise, and objects of historic or aesthetic significance. An economic or social change by itself shall not be considered
 
 *643
 
 a significant effect on the environment. A social or economic change related to a physical change may be considered in determining whether the physical change is significant.” (Cal. Code Regs., tit. 14, § 15382.)
 

 Applying these guidelines to the instant case, we conclude, as the court did below, that the FEIR alternatives discussion is legally sufficient. The Cloverleaf FEIR discusses four alternatives, which represent enough of a variation to allow informed decisionmaking.
 
 (Laurel Heights Improvement Assn.
 
 v.
 
 Regents of University of California, supra,
 
 47 Cal.3d at p. 406.) We note that the “Office/Food Court” alternative is similar to the appellants’ project. It provides for 2 hotels, office space of 350,000 square feet, 3 restaurants, retail/commercial space of 148,000 square feet and 500 residential/condo units. In comparison, appellants’ proposal consisted of 2 hotels, office space of 594,000 square feet, 3 restaurants, and retail/commercial space of 24,000 square feet. Appellants presented no evidence that their proposal offered “substantial environmental advantages” over the Cloverleaf project or the Office/Food court alternative to support a conclusion that the Agency abused its discretion when it did not specifically discuss appellants’ proposal in the alternatives section of the FEIR.
 
 (Citizens of Goleta Valley
 
 v.
 
 Board of Supervisors, supra,
 
 52 Cal.3d at p. 566.)
 

 Appellants also assert that the FEIR should have included a detailed discussion of why their project was rejected, and why certain economic advantages were provided for the Cloverleaf project and not for theirs. As we have determined above that the FEIR was not required to include appellants’ specific project in its alternatives section, we necessarily reject this variation of their argument. In any event, we are in accord with the court’s conclusion below that this type of economic/business negotiation information is not what CEQA requires. The FEIR did inform the public that appellants’ proposal had been the subject of earlier negotiations and that the project had been withdrawn.
 
 [4]
 
 Once withdrawn, appellants’ project was no longer a feasible alternative and did not merit in-depth consideration. (52 Cal.3d at p. 569.)
 

 Sanctions.
 
 We have considered the request for sanctions on appeal of the Agency and the City. While we have rejected appellants’ assertions of error, we, nonetheless, do not find their appeal to have been frivolous.
 
 (In re Marriage of Flaherty
 
 (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179].)
 

 
 *644
 
 Disposition
 

 The judgment is affirmed.
 

 Woods (A. M.), P. J., and Epstein, J„ concurred.
 

 [1]
 

 In July 1987, appellants filed a lawsuit against the Agency and the City regarding these failed negotiations. This complaint alleged causes of action for specific performance, breach of contract, intentional and negligent misrepresentation, mutual and unilateral mistake, rescission, and interference with business relations. Appellants also recorded a lis pendens on the public streets within the redevelopment project area. The court expunged the lis pendens, finding that the action, as a matter of law, could not effect title or right of possession of real property because appellants had sued on the negotiation agreement, which was “not a specifically enforceable contract for the sale of real property.” The court awarded $7,500 in attorney fees to the City.
 

 According to appellants’ exhibits attached to appellants’ opening brief, the mandatory settlement conference for this suit was May 21, 1991; the trial date was June 10, 1991.
 

 As requested, we take judicial notice of this pending suit. (Bvid. Code, § 452.)
 

 [2]
 

 In making its ruling, the court explained that the petition was denied because “The Environmental Impact Report discloses that a less dense alternative was proposed by petitioners; that it was the subject of a prior Environmental Impact Report; that the respondents chose that project and began negotiations with petitioners to develop it and that petitioners then in the course of those negotiations withdrew the project. Applying the rule of reason as discussed in Laurel Heights, no further discussion was required concerning why those negotiations broke down. ... I think the relevant portion of the Laurel Heights case is the portion of the court’s opinion that reads as follows, quote: ‘The need for thorough discussion is not to be construed unreasonably, however, to serve as an easy way of defeating projects. Absolute perfection is not required. What is required is the production of information sufficient to permit a reasonable choice of alternatives so far as environmental aspects are concerned. When the alternatives have been set forth ... in this manner, an EIR does not become . . . vulnerable because it fails to consider in detail each and every conceivable variation of the alternatives stated. As with the range of alternatives that must be discussed, the level of analysis is subject to a rule of reason,’ and I think applying that rule of reason here, the [appellants’] project and . . . the fact that it is no longer an alternative and the reasons therefore, are sufficiently stated in the Environmental Impact Report. Q] What is disturbing here is that petitioners appearing [sic] to be using the California Environmental Quality Act for the improper purpose of attempting to gain an advantage in another lawsuit that they have pending against the respondents by requiring the respondents to set forth in the Environmental Impact Report their justification for the negotiating tactics that they employed in dealing with the petitioners. Why did they make certain economic demands on the petitioners that they are not making upon the present developer that they have selected seems to be the crux of the . . . petitioners’ argument and these are not the type of environmental considerations that are the rationale of . . . the California Environmental Quality Act [CEQA], These may be . . . political considerations that are of interest to the voters in the Redevelopment Agency but that does not mean that . . . these nonenvironmental considerations may be used by a disappointed developer as a reason for trying to stop the project by cloaking himself in the . . . environmental concerns under CEQA, and it seems to me that that is what is being done here, so for those reasons the petition for the writ is denied.”
 

 [3]
 

 While our Supreme Court has not decided whether the CEQA guidelines are regulatory mandates, this court affords great weight to them unless a provision is “clearly unauthorized or erroneous under CEQA. [Citation.]”
 
 (Laurel Heights Improvement Assn.
 
 v.
 
 Regents of University of California, supra,
 
 47 Cal.3d at p. 391, fn. 2.)
 

 [4]
 

 Appellants object to the FEIR stating that their project was “withdrawn.” Whether the project was withdrawn by appellant or withdrawn by virtue of the fact that it ceased to be considered because of failed negotiations and the subsequent lawsuit is of little import. The significant fact is that the end result was the same: the project was no longer being considered.